UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23080-UU

INTERNATIONAL MARKETS LIVE, INC.,
d/b/a iMARKETSLIVE,

        Plaintiff,

v.

SCOTT HUSS

        Defendant.

_____/

## ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Motion for Preliminary Injunction ("Motion") (D.E. 37).

THE COURT has reviewed the Motion, the pertinent parts of the record, and is otherwise fully advised in the premises. For the following reasons, the Motion is GRANTED.

## PROCEDURAL BACKGROUND

On September 2, 2020, this Court referred an earlier unsealed and redacted Motion for Preliminary Injunction, D.E. 15, to Chief Magistrate Judge John J. O'Sullivan. D.E. 27. Plaintiff then filed the instant sealed Motion on September 8, 2020. The Motion seeks preliminary injunctive relief on claims of (1) breach of contract and (2) misappropriation of trade secrets. After extensive briefing and an evidentiary hearing, Judge O'Sullivan issued a Report and Recommendation on November 25, 2020, D.E. 90 ("Report"), recommending that the Motion be granted. On December 9, 2020, Defendant filed objections to the Report. D.E. 91 ("Objections").

1

**LEGAL STANDARD**

This Court makes a *de novo* determination of those portions of the Report to which an objection is made. 28 U.S.C. § 636(b)(1). Further, "objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**DISCUSSION**

Defendant makes sweeping objections to many findings of fact and conclusions of law in the Report. The Court considers the Objections in turn.

1. **Breach of Contract Claim**

Plaintiff ("IML") asserts that Defendant ("Huss") breached the non-solicitation and confidentiality obligations of IML's Policies and Procedures ("P&Ps") to which Huss assented. Report at 23. To succeed on a breach of contract claim under New York law, IML must establish (1) a valid contract, (2) IML's performance under the contract, (3) Huss's breach of the contract, and (4) resulting damages. *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806 (N.Y. App. Div. 2011). Defendant objects to numerous parts of the Report with respect to the Motion's breach of contract claim. None are meritorious.

  A. *Whether the Parties Formed a Contract*

Huss asserts that the Report erroneously concluded that he (a) assented to the P&Ps and that (b) he would be bound by the P&Ps. Obj. at 3–4. The Court disagrees.

The Report's determination that Huss assented to the P&Ps was supported by testimonial evidence that "Mr. Huss's User ID 992894 clicked the 'I Agree' button on the pop-up regarding

IML's updated P&Ps on April 7, 2019." Report at 10. Indeed, Huss admits that "evidence shows that someone using Mr. Huss's account clicked 'I Agree' in April 2019." Obj. at 3. Huss's argument that IML has failed to establish that he assented to the P&Ps because "[t]here are no witnesses that saw Mr. Huss click 'I Agree' and Mr. Huss does not recall doing so" strains credulity. *See id.* The Court agrees with Judge O'Sullivan's credibility determinations and evaluation of evidence in finding that Huss manifested agreement to the P&Ps.

Huss's argument that the P&Ps did not bind him because they are "mere policies and procedures" is meritless as well. Unlike the authority cited by Huss, *see* Obj. at 4, in this case, as Judge O'Sullivan noted, the P&Ps are not ancillary policies or employee guidelines—they are expressly part of an agreement that governs IML and Huss's relationship, and the parties specifically manifested assent to the P&Ps. *See* Report at 26 (citing *Talk Fusion Inc. v. Ulrich,* 2011 WL 2681677, at *9 (M.D. Fla. June 21, 2011)). The parties entered into a valid contract—including the P&Ps.

B. *Whether IML Performed*

Huss asserts that the Report incorrectly found that IML did not waive its right to enforce the P&Ps against him because IML did not enforce them against others. Obj. at 5. This is, at best, collateral to the issue of whether IML performed its obligations. Further, as Judge O'Sullivan explained, a company can determine whether to enforce obligations on a case-by-case basis as a matter of business judgment without raising the specter of waiver. Report at 28 (citing *Horne v. Radiological Health Services, P.C.*, 371 N.Y.S.2d 948, 961 (N.Y. Sup. Ct. 1975)).

### C. Whether the P&Ps are Reasonable and Enforceable

Judge O'Sullivan held that the restrictive covenants of Sections 12 and 3.7 are reasonable in scope and time, are necessary to protect IML's business interests, and do not impose an undue burden on Huss or prevent him from earning a livelihood. Report at 33. Huss objects to Judge O'Sullivan's refusal to find that Sections 12 and 3.7 of the P&Ps are unenforceable as a matter of reasonableness, and to Judge O'Sullivan's findings that the restrictive covenants are necessary to protect IML's business interests. Obj. at 6–7.

Huss argues that Section 12's restriction of information including "business reports, lists of Customer and IBO names and contract information and any other information both written or otherwise circulated by IML or pertaining to the business of IML" is impermissibly overbroad. Obj. at 6. Huss is mistaken and the law that Huss cites in support of this argument is inapposite. The non-disclosure provision at issue in the case Huss cites, *L.I. City Ventures v. Urban Compass, Inc.*, went so far as to prevent the former employee "from using publicly available information, such as listing information, that the rest of the world can use." 2019 U.S. Dist. LEXIS 7782, at *36 (S.D.N.Y. Jan. 16, 2019). And contrary to Huss's assertion, the information covered by the restrictive covenant does not need to be limited to trade secrets.[1] In fact, New York courts identify "confidential customer lists" as precisely the type of information that an employer may seek to protect. *See, e.g.*, *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999). Here, the restrictive covenant is properly "limited to trade secret *and other proprietary and confidential information*." *Id.* at *38 (emphasis added); *see also Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F. Supp. 119, 134–35 (E.D.N.Y. 1997). Section 12 of the P&Ps is not impermissibly overbroad.

---

[1] This applies equally to Huss's objection that Section 3.7 potentially covers more than trade secret information.

Similarly, contrary to Huss's assertion, Section 3.7 is not overbroad merely because it prohibits the solicitation of some affiliates and customers that Huss did not personally sponsor. Huss cites cases which do not dictate the result he seeks. Unlike the provision here, the overbroad non-solicitation covenant in *Sussman Educ., Inc. v. Gorenstein* extended to "any . . . business relation" of the plaintiff. 175 A.D.3d 1188, 1189 (N.Y. App. Div. 2019). Unlike that overbroad non-solicitation provision, Section 3.7 "expressly permits Mr. Huss to work for any other business after he leaves IML." Report at 30. Further, in *Gorenstein*, the *plaintiff* was the breaching party rather than the defendant—as Huss is here. *See id.* ("A covenant not to compete is not enforceable 'when the party benefited was responsible for the breach of the contract containing the covenant'" (citation omitted)).

D. Whether Huss Breached the P&Ps

Huss objects to the finding that he breached Sections 3.7 and 12 of the P&Ps by, *inter alia*, buying plane tickets for IML affiliates to travel to Utah to meet the founder of Well Beyond and using confidential information to recruit other IML affiliates to Well Beyond. Obj. at 8. Huss does not offer a basis for the objection other than his testimony that purchasing tickets to Utah for IML affiliates was unrelated to prohibited recruitment efforts—though he does not offer an alternative explanation—and that the confidential information he used was not a trade secret. Neither of these arguments are credible. The Court agrees with Judge O'Sullivan's finding that there is sufficient evidence in the record to find that Huss breached the P&Ps. Report at 33.

E. Whether IML was Damaged

As discussed in the irreparable-harm analysis below, the Court agrees that Huss's breach damaged IML. *See* Report at 34.

## 2. Defend Trade Secrets Act Claim

To prevail on a trade secret misappropriation claim under the Defend Trade Secrets Act ("DTSA"), IML must show that it (1) possessed a trade secret, and (2) the defendant misappropriated it by using or disclosing it. *See Medidata Sol., Inc. v. Veeva Sys.*, 2021 U.S. Dist. LEXIS 24734, at *5 (S.D.N.Y. Feb. 9, 2021). Huss objects to the Report on the grounds that the IBO rank and group chat was not a trade secret because (a) IML did not take reasonable steps to keep it secret, (b) some information of IBO rank exists outside of IML's internal reports, and (c) Huss asserts that he—not IML—owned the information in the internal reports because it was the result of his work and recruitment. Obj. at 8–9. Huss also objects to the Report's finding that IML will suffer irreparable harm without a preliminary injunction because (a) no IML employees testified, (b) there is no evidence of lost goodwill at IML, and (c) IML has suffered calculable and not irreparable harm. Obj. at 9.

### A. *Whether IML Possessed Trade Secrets*

IML's IBO ranks and group chat information constitute trade secrets. The record and consequent Report establish that IML takes reasonable steps to keep information such as IBO ranks and group chat information secret. It secures access to its online portal and updates access restrictions multiple times a day, ensuring that only authorized personnel have access. IML even monitors activity in the chats and will terminate access for those no longer affiliated with IML. Report at 38. Furthermore, while some information about IBO ranks has been published publicly, that does not mean that the internal, comprehensive compilations of such data are not trade secrets. *See WorldVentures Mktg. LLC v. Rogers*, 2018 WL 4169049, at *6 (E.D. Tex. Aug. 30, 2018); Report at 37. And finally, because Huss agreed to the P&Ps, he is not the owner

of the information—IML is.  Huss's objections to the Report, insofar as it finds that IML had trade secrets, are meritless.

  *B. Whether IML Suffers Irreparable Harm Without a Preliminary Injunction*

  The Report correctly concludes that IML made the requisite showing of irreparable harm. Huss's assertion that the court could not find irreparable harm because no IML "employees" testified is irrelevant.  IML relies on the IBOs—who did testify, as Huss acknowledges—for revenue.  *See* Report at 5.  Additionally, the record demonstrates that IML has suffered harm to its goodwill and reputation, and it has lost customers as a result.  Report at 41; *see also BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005).  Finally, loss of customers and injury to goodwill are well established as forms of irreparable harm, and Huss's averments to the contrary are unavailing.

  Huss does not levy specific objections outside of those asserted regarding irreparable harm against the Report's findings that injury to IML outweighs injury to Huss, others, and the public interest.  Regardless, the Court does not find Huss's arguments persuasive.  The Report as supported by the record establishes that the irreparable harm facing IML outweighs the countervailing interests.  Relatedly, because IML has shown a substantial likelihood of success on the merits and the issuance of this preliminary injunction will not impair Huss's ability to earn a living free of misappropriation or violation of his contractual duties, the Court concurs with the Report's recommendation not to require IML to post a bond.

  Upon *de novo* review, the Court agrees with Chief Magistrate Judge O'Sullivan's recommendation to grant the Motion.  Accordingly, it is hereby

  ORDERED AND ADJUDGED that the Report, D.E. 90, is RATIFIED, ADOPTED, and AFFIRMED.  It is further

ORDERED AND ADJUDGED that the Objections, D.E. 91, are OVERRULED. It is further

ORDERED AND ADJUDGED that the Motion, D.E 37, is GRANTED. It is further

ORDERED AND ADJUDGED that the Motion for Preliminary Injunction, D.E. 15, is DENIED AS MOOT.

DONE AND ORDERED in Chambers in Miami, Florida, this _8th_ day of March 2021.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

Cc:
Counsel of Record via CM/ECF